## U.S. DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ELOY A. ROLE,
MODESTA M. MEZA-ROLE
    Plaintiffs,
    v.
DEP. OF COMMUNITY AFFAIRS
DIV. OF HOUSING AND
COMMUNITY RESOURCES
    Defendant,

Civil Case. No.



SCOTT CLAUSS
ANTHONY VALDES
RICHARD G. PARTYKA,
    Codefendants,
In their individual capacities

**JURY TRIAL DEMANDED**

## COMPLAINT FOR CIVIL RIGHT VIOLATIONS

### PRELIMINARY STATEMENT

### Defendant and Codefendants Scott Clauss and Anthony Valdes

This is an action brought under 42 U.S.C. §§ 1983 – 1985
Plaintiffs bring this action pursuant 42 U.S.C. § 1983 and 42 U.S.C § 1985 are seeking damages to remedy violations of their rights secured by the U.S, Constitution and the color of the state law together with the Fourteen Amendment Section 5 of the U.S. Constitution
Such violations are a persistent neglect of the Defendant duty of preserve the integrity and habitability of housing in the State. Defendant has turned blind on the Four Family House motive of controversy thus allowing in the case at hand place the Plaintiffs' health and safety at risk.

### Codefendant:

### Richard G. Partyka

This is an action brought under Breach of Covenant, N.J.S.A. 46:8-27 through 46:8-37, N.J.S.A. 46:8-48 and N.J S.A. 2A-42-88.
Plaintiffs in this action are seeking damages under the provisions of the New Jersey Laws, Tenant and Landlord Law against the Landlord and the person who claims to be the owner of the Four Family House rented by the Plaintiff. Codefendant has been circumventing for years the provisions of the Landlord and Tenants Laws through undue influences in the forums where Plaintiffs have ventilated Codefendant open abuses of the warrant of habitability, breach of

Covenants and Ordinances of the City of Newark, among others not mentioned in this Complaint.

## NOTICE OF CLAIM

Plaintiff tells the Court that he filed a Notice of Claim with the State of New Jersey alerting it that he will file a lawsuit against an agency of the State of New Jersey and it had no answer from the State.

## THE PARTIES

1. Plaintiff Eloy A. Role is a resident of the State of Florida and resides at the State of New Jersey at his Wife House while undertaking medical treatment at the Mount Sinai Hospital, and The New York Weil Cornell School of Medicine and during visits to his Wife.

   Plaintiff Modesta M. Meza-Role is a resident of the City of Newark, Essex County State of New Jersey
   Codefendants

2. Defendant Department of Community Affairs, Division of Housing Community has its headquarters in the City of Trenton, Mercer County New Jersey

3. Codefendants Scott Clauss, Anthony Valdes and are officials of the New Jersey Department of Community Affairs and are being sued in their own capacity and their addresses are the same as the Defendant.

   Codefendant Richard G. Partyka resides in the City of Newark, Essex County, New Jersey.

## JURISDICTION AND VENUE

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

42 U.S.C. §§ 1983 and 1985 and common law. Supplemental jurisdiction over the jurisdiction over the pendant state claims is proper under 28 U.S.C. § 1367(a) and common law.

This court possesses proper subject matter and personal jurisdiction over the parties Venue is appropriate in this district.

The acts occurred in the State of New Jersey, Plaintiffs' causes of actions arose in the State of New Jersey.

## ALLEGATIONS OF THE FACTS

**Department of Community Affairs, Division of Housing and Community Resource**
**Codefendants Scott Clauss, Anthony Valdes and Richard G. Partyka**

4. On or about March 15, 2020, Plaintiffs realized a water leakage falling into the bathtub of the Apartment 1B, Unit this one occupied by the Plaintiff. The leakage had origin from a pipe that was connected to the sink of the bathroom of the Apartment 2B which is located immediately above the Plaintiffs and whose layout matches Plaintiffs' bathroom. Plaintiffs summoned a plumber who made an improvised repairs in the pipe already mentioned.

5. A visual inspection in the main discharge of the bathtub of the Apartment 2B denounced that the Tenants at the Apartment 2B had poured on it a chemicals that burned the joint that connected to a discharge piping giving way to a sewage leakage.

6. A second visual inspection carried by the Plaintiffs on August 30, 2020, showed a leakage from a rubber joint approximately four and a half inches or 5 inches that connects a "T" connection from the toilet discharge belonging to the Apartment 2B with. The "T" connection connects to a pipe discharge approximately two feet long. The "T" connection and the pipe discharge are made of cast iron and have been in place for one hundred years. Those connections are transpiring sewage water from the toilet and sink discharges belonging to the Apartment 2B. The rubber joint leakages also contain human waste disposal. Plaintiffs were forced to install a flap underneath the rubber joint already mentioned in order to avoid leakages that otherwise will be fallen on the Plaintiffs' toilet. The flap is actually diverting the sewage mentioned through the space of five inches of a wall that separates the bathroom from the kitchen of the Apartment 1B via the basement floor.

The toilet that belongs to the Apartment 2B sits in a base of wood, (the floor of the floor of the Bathroom of the Apartment 2B) that is totally decayed and out of level presenting a risk to the Tenants of the Unit 2B when they sit on the toilet.

The toilet that belongs to the Apartment 2B sits in a base of wood, (the floor of the bathroom of the Apartment 2B) that is totally decayed and out of level presenting a risk to the Tenants of the Apartment 2B when they are sat in the toilet..

There was a pipe whose diameter was five inches and with a length of seven feet that made of cast iron, (main sewage discharge via the basement of the Four Family House) whose age was one hundred years old that after it broke was replaced at the Plaintiffs' expenses by a PVC pipe. The drywall covering the pipe mentioned whose dimensions were seven feet by two feet seven inches was destroyed by the sewage leakages and replaced by a sheet of wood at the Plaintiffs' expenses.

7. By August 30, 2020, Plaintiffs notified Thereza Salzano, hereinafter called "Salzano"who acts as a manger of the Four Family House by a letter about the inconveniences. Salzano is the Landlord Mother in Law.

8. By September 4, 2020, Salzano notified Plaintiffs that she did not want to get Involved in the issue and the Plaintiffs must address Richard G. Partyka, hereinafter "Partyka" who is the Landlord of the Four Family House.

9. Plaintiff then addressed Partyka about the nuisances that Plaintiffs were undertaken by USPS Regular and Certified Mail. The mail was dated September 10, 2020.

10. Due to the unsanitary and unsafely conditions that reined in the Plaintiffs' Apartment and the failure of Partyka to act accordingly Plaintiffs addressed by letter through FEDEX services with signature request the Department of Community Affairs, Division of Housing and Community Resources, hereinafter called ("The Department") on September 15, 2020, requesting an immediate inspection on the Plaintiffs' Apartment 1B.

11. From the date in which Plaintiffs started dwelling at the Four Family House (September 1997) they noticed that at least in four occasions Department of Community Affairs, Division of Housing and Community Resources placed in the entrance of the Four Family House no lessthat four Notice of Inspection. Nevertheless the Four Family House for "unknowns" reasons in the period already mentioned the House had no inspections from the aforesaid Department.The aforesaid per se constitutes a showing of neglect and by the N.J. Department of Community hereinafter called ("N.J. Community Affairs") in connections to house inspections to be carried out at the Four Family House located at 22-24 Garrison Street, Newark, New Jersey,

(hereinafter called ("The House").

12. Defendant was given by Plaintiffs through an assessment the gravity of the habitability conditions that reigned in their Unit 1B and Defendant in a reckless disregard turn blind eye on the dangers that Plaintiffs had to afford in the above mentioned Unit crowded with Code Violations and unsanitary and dangerous conditions.

13. By September 22, 2020, Plaintiffs, once again addressed N.J Community Affairs, this time with luxury of details by means of photographs letting The Department to have a clear understanding of the occurrences at the Plaintiffs' Apartment 1B.

14. By October 15, 2020, an inspection was carried out at the Plaintiffs' Apartment 1B by the Defendant and one of its Officials Anthony Valdes. Previously a sign was placed in the main entrance of the Four Family House giving notice to its Tenants that the House would be subjected to a full inspection of its four Units. Anthony Valdes hereinafter called ("Valdes") inspected only the Plaintiffs' Unit when he was supposed to inspect each of the Units that compose the Four Family House. In doing so Valdes spent only ten minutes inspecting Plaintiffs' Unit. Valdes' inspection raised indicia that arrangements were done previous to Valdes' visit to the Four Family house in which the name of the apparent landlord and apparent owner surfaced, namely, Richard G. Partyka, named above as ("Partyka") in this Complaint.

No actions whatsoever were undertook following Valdes' inspection which further points out that the purpose of the Valdes' inspection was not an inspection of the Four Family House and particularly to report code violations on the Plaintiffs' Unit but just to transpire Plaintiffs' conditions of living at their Unit to Partyka.

15. By November 23, 2020, and with a previous notice to the Tenants of the Four Family House an inspection was carried out by Inspector Brown, hereinafter called ("Brown"). Inspector Brown introduced himself to the Plaintiffs as one Official of the Defendant. Brown stated at the beginning of his inspection that "he would inform his supervisor in connection with what he saw in the Plaintiffs' Unit but that he was not part of the decision making at the Defendant's". Brown inspected Plaintiffs' Unit and then he attempted to inspect Salzano's Unit and Salzano

denied Brown access to her Unit. It followed a Brown's requests for entrance at the Unit 2B, Unit this one occupied by the Gaskin' Family and again Brown's access to Unit 2B for inspection was denied by the Tenants of Unit 2B. It then followed Brown's request for access to Unit 2A Pardo's Family and Brown's access to Unit 2A was denied by its Tenants.
As stated above Point 14 of this Complaint no actions whatsoever were carried out to correct code violations at Unit 1B.

16. Subsequent letters were sent to the Defendant on November 26, 2020, November 30, 2020, and December 28, 2020, asking The Department for its help to restore Plaintiffs of safe, secure and sanitary conditions in the Unit 1B but Plaintiffs' requests were neglected and disregarded in a clear attempt by Partyka and N.J. Community Affairs to make Plaintiffs' conditions of living at their Unit 1B unbearable.

17. By the beginning of December 2020, and at the inception of the occurrences at the Unit 1B Plaintiffs' were unable to use the bathtub and they had to access the Unit 1B bathroom using full face masks with poisonous gas filters.

18. Point 17 depicted dangerous health conditions at the bathroom of Unit 1B.
The situation was originated at Unit 2B. Unit 2B this was occupied by among others Tenants the Damon Gaskin's Family, hereinafter called ('Gaskin") who was the Family Head.
At one point Plaintiffs started realizing that industrial chemicals were recycled discharging them into the discharge of the bathtub of Unit 2B. Those chemicals eroded the bathtub's discharge of Unit 1B.

Odors resembled to be the ones belonging to sulfuric acid that destroyed the plumbing installations of Unit 2B.

Prima facie Gaskin was someone whose business was collecting and/or recycling third party garbage which was stored at Unit 2B and disposed on Monday and Wednesday nights using the garbage's truck of the Municipality of City of Newark.

It was not uncommon to see up to thirty garbage bags on the sidewalk of the Four Family House waiting for the Municipality of Newark's garbage truck on Monday and Wednesday .

19. Partyka was fully aware of the events and activities at the Unit 2B mentioned at Point 18 of this Complaint and took no action to correct them because Partyka was fully aware the events mentioned were making Plaintiffs' life miserable.

20. During the last week of December 2020 and last week of January 2021 the Gaskin Family moved out from the Unit 2B of the Four Family House.

21. On April 29, 2021, Plaintiffs realized that attempts to unclog the bathtub of Unit 2B were carried out using industrial over the counter chemicals like Drano and addressed the Defendant in that regard alerting Partyka and the Defendant that that practice burned Tenant Modesta M. Meza's back situation this one that was taking to the Mercer County Court's attention in a lawsuit against Partyka's Insurer United Fire Group.

22. By May 14, 2021, a sign was placed at the front of thePlaintiffs' door of their Unit 1B and and the service door of the same Unit 1B stating that on May 17, 2021. The Notice lacked the scope of the inspection and the building, Registration No. and there was a name of an inspector Bryant.

23. By the 17 of May 2021, the Four Family House was visited at 11; 30 a.m. by three individuals apparently belonging to The Department, John Doe, Inspector Bryant, and Scott Clauss, Supervisor Inspector 1, hereinafter called ("Clauss").

24. Clauss opened the conversation with Plaintiff Eloy A. Role, hereinafter called ("Role") as follows:

Clauss: " Partyka says that you (Role) do not let him to come in the Unit 1B to make repairs"
Role: "Partyka is neither a State of New Jersey Certified and licensed Plumber nor he has an insuarce policy"
Clauss: "But he can do the job he is in the business of remodeling"
Role: "It does not mater we are not ready to pay for accidents or death of somebody working here"
Clauss: "Yeah you are right, buy you know I come here and I charge Partyka with a fine, he does not repair and I charge him again with a fine, and a fine and a fine you see……."

Role: "We are in the same spot there are no repairs in the Unit"

Clauss: "I am going to talk to Partyka, we are going to come back"

Role: "Ok sounds good"

26. By May 19, 2021, at 10:00 a.m. Role parked his bicycle in the backyard of the Four Family House and when coming back to his Unit he saw, Clauss, John Doe and Inspector Bryant waking by the corridor that has access to Role's Unit in an attempt to gain access to Role's Unit. Previously and while in the backyard Role saw Clauss and his escorts talking with Partyka at the left entrance of the Four Family House above mentioned that is the cars' access for parking When at the door entrance Role invited the three individuals to enter his Unit and the three apparently the Defendant Officials entered Role's Unit and the following conversation took place.

Clauss: "Look you are going to move to the second floor to Unit 2B. That Unit would be revamped, it is going to be painted everything is going to be fixed at the second floor.
And look I talked to your Wife and I recorded a verbal contract with her in such a way that if you do not move to the second floor I am going to place you out of this apartment by force 1, 2, 3.

Role: "I am sick I suffer CVD and emphysema I cannot climb stairs"

27. After the conversation above depicted Clauss told Role that he will call the Newark Police because a propane tank that Role has in order to have hot water since the Role Unit has no gas supply shut off due to Partyka's failure to adhere to the lease agreement.

28. With no doubt that Clauss jumped into the provisions mentioned by Role at the Preliminary Statement of this Complaint.

Clauss and his escorts visited the Plaintiffs' Unit in order to harass, bully, intimidate, coerce, molesting, extort and menace Plaintiff.

The indicia that Clauss and his escorts entered into the provisions of Sections of the U.S.C 1983 and 1985 and Fourteen Amendment of the U.S Constitution (1.5) were crystal clear.

While Clauss was addressing Plaintiff Role on May 17, 2021, and telling him that he was charging Partyka with fines because of code violations now Clauss changed the script and

propelled Plaintiffs eviction from their apartment if they do not move upstairs to the Unit 2B.

29.  Clauss' maneuvers on behalf of the N.J. Community Affairs were written on the walls.

He was seeking to evict Plaintiffs in order to let Partyka perform together with jack-of-all-trades repairs at the Plaintiffs' Unit 1B and change the recitals of the original Lease Agreement that governs the rental of the Unit 1B signed on September 1, 1997.

Clauss with his escorts engaged in two kind of conspiracies to deprive Plaintiffs of their civil rights through a joint enterprise.

The actions by Clauss and his escorts on May 19, 2021, are the epilogue of the N.J. Community Affairs' actions that commenced at the time Plaintiffs filed the first claim with the N.J. Community Affairs and lasted so far.

Those actions by Defendant and Codefendants were a systemic deprivation under the color law of the state of the Plaintiffs' rights secured by the U.S. Constitution and the Fourteen Amendment of the U.S. Constitution (5).

### Codefendant Richard G. Partyka

30.  Plaintiffs by all means tried to reach an amicable solution to the problems that arouse at Unit 2B. Partyka was given the opportunity by Plaintiffs of making the necessary repairs in the Unit 1B without resorting to a court of law.

31.  Nevertheless Partyka refused to participate with the Plaintiffs in the pursuing of a happy end for the controversy expecting perhaps that reverting to undue influences will help him to bend the justice's elbow.

32.  The actual conditions of the Plaintiffs' bathroom indicates beyond the reasonable doubt that Partyka crossed all de lines that lead him to a delinquent conduct.

33.  To place two elders in the sanitary conditions that Partyka placed his Tenants talks of a lack of morals and civility where the end justify the means.

34.  By the actions of the Tenants at the Unit 2B of using the Unit 2b as a place to store third party waste disposal and pouring industrial waste of third part persons into the plumbing

installations of Unit 2B Plaintiffs had the covenants of quiet environment and warrant of habitability violated by Partyka.

35. Point 34 above depicts a situation depicted by plaintiffs at Point 4 of this Complaint that evolved and thus deteriorated and destroyed the plumbing installations of Unit 2B having as a direct results leakages of water from the Unit 2B into the bathroom bathtub of unit 1B. The same situation repeated with the discharge of the toilet of Unit 2B where human wastes were falling into the toilet of Unit 1B disposal.

36. Partyka being duly informed of the events at its very inception never took action to ameliorate and repair Plaintiffs' nuisances.

The safe, sanitary and health conditions at the Unit 2B whose Tenants were the Damon Gaskin's Family were a fact of no concern for Partyka when those conditions had a direct impact at the Plaintiffs' Unit 1B.

## COUNT I

## VIOLATIONS OPF THE RIGHTS SECURED BY 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS UNDER THE COLOR LAW OF THE STATE

(Defendant and Codefendants excluded Codefendant Richard G. Partyka)

37. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

38. All the actions taken by Defendant N.J. Community Affairs or those acting on behalf of N.J. Community Affairs and referred herein, including the actions undertook by Anthony Valdes and Scott Clauss while acting under the color law of the state and had effect on depriving Plaintiffs of rights secured by the Constitution and Laws of the United States, specifically the Equal Protection Clause of the Fourteen Amendment of the U.S. Constitution.

## COUNT II

## VIOLATIONS OPF THE RIGHTS SECURED BY 42 U.S.C. § 1985(3) DEPRIVATION OF RIGHTS OR PRIVILEGES

(Defendant and Codefendants excluded Codefendant Richard G. Partyka)

38. Plaintiffs hereby incorporate by reference each of the allegations set forth in the

preceding paragraphs as if realleged fully herein.

39. Plaintiffs were deprived of rights and privileges of, equal privileges and immunities under the law.

40. All the actions taken by Defendant N.J. Community Affairs or those acting on behalf of N.J. Community Affairs and referred herein, including the actions undertook by Anthony Valdes and Scott Clauss and had effect on depriving Plaintiffs of rights secured by the Constitution and Laws of the United States, specifically the Equal Protection Clause of the Fourteen Amendment of the U.S. Constitution.

## COUNT III

## VIOLATIONS OPF THE RIGHTS SECURED BY FOURTEEN AMENDMENT OF THE U.S. CONSTITUTION SECTION 1.5 EQUAL PROTECTION CLAUSE

(Defendant and Codefendants excluded Codefendant Richard G. Partyka)

41. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

42. At all times herein, N.J. Community Affairs, Anthony Valdes and Scott Clauss were the policy makers at the New Jersey Department of Community Affairs.

43. The acts and omissions of the Defendant and Codefendants Anthony Valdes an Scott Clauss were so culpable as to constitute authorization of, and acquiescence in, the unlaufull conduct of Defendant.

44. Defendant, Codefendants Anthony Valdes and Scott Clauss are vicariously liable for their unlawful acts.

45. Defendant and Codefendants Anthony Valdes and Scott Clauss' acts were intentional malicious, willful, wanton and obdurate, and in gross and reckless disregard of Plaintiffs' Constitutional Rights.

## COUNT IV

## BREACH OF COVENANTS, N.J.S.A. 46:8-27 THROUGH 46:8-37, N.J.S.A. 46:8-48 AND N.J S.A. 2A-42-88, BREACH OF THE WARRANT OF HABITABILITY. INTENTIONAL

## INFLICTION OF EMOTIONAL DISTRESS ON THE PLAINTIFFS AND HARRASMENT
(Codefendant Richard G. Partyka)

46. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs Points 30 to 36 of this Complaint as if realleged fully herein.

47. At all times relevant herein Partyka had control on the Plaintiffs' Unit 1B and and Unit 2B and was enabled by his right of entry into the rented property for inspections and repairs but Partyka chose to neglect and disregard Plaintiffs' request for repairs in their Unit 1B.

48. Codefendant Partyka's acts were intentional, malicious, willful wanton, obdurate, and in gross and reckless disregard of Plaintiffs' rights as a tenant under the provisions of the New Jersey Statutes Annotated covering the relationship between tenant and landlord laws.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray forjudgement as follows:

A. Compensatory, against Defendant jointly and severally, and punitive damages against the New Jersey Department of Community Affairs, Anthony Valdes, Scott Clauss and Richard G. Partyka.

B. Pre-and post- judgment interest as allowed by law.

C. Reasonable costs and attorneys fees (if retained) incurred in bringing this action

and

D. Such other relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demands a trial by jury on all counts so triable

Respectfully submitted

Eloy A. Role, *pro-se*
Modesta M. Meza-Role, *pro-se*
P.O. Box 1761
Newark, New Jersey 07101
saulegas@gmail.com
(908) 202-4126

Eloy A. Role, *pro-se*
Modesta M. Meza-Role, *pro-se*
P.O. Box 1761
Newark, New Jersey 07101
saulegas@gmail.com
(908) 202-4126